# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

IN THE MATTER OF:

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF
VIRGINIA (RICHMOND DIVISION)

CASE NO. Civ. A. No. 18-cv-12277-JGD

(Hon. Judith Gail Dein)

DANA DUGGAN, Individually

and *behalf of persons similarly situated*,

    Plaintiff,

v.

MATT MARTORELLO and EVENTIDE
CREDIT ACQUISITION, LLC,

    Defendants.

Misc. No. 22-MC-665 (ADC)

Motion to Quash Out-of-District Subpoena



RECEIPT # 103003
AMOUNT: $49.00
NOV 17 2022
CASHIER'S SIGNATURE

RECEIVED CASHIER

CLERK'S OFFICE USDC PR

2022 NOV 17 PM4:45

## MOTION TO QUASH SUBPOENA TO MONIQUE MARTINEZ
## AND MEMORANDUM IN SUPPORT

TO THE HONORABLE COURT:

    COMES NOW, nonparty Monique Martínez, specially appearing, and without submitting herself to the jurisdiction of the Court nor waiving any defense, through her undersigned counsel, and respectfully moves this Court for an order, pursuant to Rule 45 of the Federal Rules of Civil Procedure ("Rules"), quashing Defendant Matt Martorello's Subpoena to Testify at a Deposition in a Civil Action ("Subpoena"), served November 4, 2022, seeking deposition testimony in the above-referenced matter and related to Martinez's employment with Ascension Technologies, LLC ("Ascension"). The reasons in support of this motion are set forth in the accompanying memorandum of law, which is incorporated herein by reference.

## INTRODUCTION

As a threshold matter, the subpoena must be issued with a court having the jurisdiction to do so. FRCP 45(d)(3) controls the procedures and circumstances appropriate for quashing a subpoena, which states that a court "must quash or modify a subpoena that . . . subjects a person to undue burden." FRCP 45(d)(3)(A)(iv). FRCP Rule 45(d)(3), requires a court to quash or modify a subpoena to a nonparty when the deposition amounts to undue burden on the nonparty. And also under that Rule, a court "may" quash a subpoena when it requires "disclosing a trade secret or other confidential research, development, or commercial information." FRCP 45(d)(3)(B)(i).

"When a subpoena should not have been issued, literally everything done in response to it constitutes 'undue burden or expense' within the meaning of Civil Rule 45(c)(1). It is similarly 'undue' to have to contend with a motion to compel compliance with an illegitimate subpoena." *Builders Ass'n of Greater Chicago v. City of Chicago,* No. 96 C 1122, 2002 WL 1008455, at *4 (N.D. Ill. May 13, 2002) (quoting *In re Shubov*, 253 B.R. 540, 547 (B.A.P. 9th Cir. 2000)).

The Court issuing the subpoena, the United States District Court for the District of Massachusetts, does not have jurisdiction to issue the subpoena because Martinez is immune from suit. Moreover, the subpoena results in an undue burden on Ascension and Martinez and requires disclosure of confidential trade secrets.

Here, Martorello issued the Subpoena pursuant to Rule 45 and served it to Martinez in Puerto Rico demanding testimony in Puerto Rico. Based on the reasoning set forth herein, Martinez properly moves to quash.

## BACKGROUND

On June 22, 2017, a group of borrowers sued Big Picture Loans, LLC ("Big Picture") and Ascension, (collectively the "Tribal Entities") in the Eastern District of Virginia, alleging a RICO conspiracy to violate state usury laws. See *Williams v. Big Picture Loans*, LLC, 929 F.3d 170, 175 (4th Cir. 2019); Several copycat lawsuits followed, one of which is *Duggan v. Martorello,* Civil Action No. 18-12277-JGD (D. Mass. Filed October 31, 2018).

Following years of litigation, on July 3, 2019, the United States Court of Appeals for the Fourth Circuit issued the *Williams* decision, now a pivotal decision in federal Indian law. *Williams* held that Big Picture and Ascension were arms of the Lac Vieux Desert Band of Lake Superior Chippewa Tribe ("LVD") and therefore shared LVD's sovereignty and sovereign immunity. *Id.* at 185. After remand, the Tribal Entities settled the remaining outstanding claims and were dismissed from all of the lawsuits nation-wide, including *Duggan*. See *Galloway v. Williams*, No. 3:19-CV-470, 2020 WL 7482191, at *1 (E.D. Va. Dec. 18, 2020) (approving settlement); *Duggan v. Martorello,* No. CV 18-12277-JGD, 2021 WL 4295828, at *2 (D. Mass. Sept. 21, 2021) (discussing settlement);

However, *Duggan* continues against remaining Defendants primarily Matt Martorello, an individual that was at one time retained by the Tribal Entities to provide loan servicing and later acted as a seller-financier when he sold his servicing company to the Tribe (which later became Ascension). See *Duggan v. Martorello*, No. CV 18-12277-JGD, 2022 WL 952187 (D. Mass. Mar. 30, 2022) ("*Duggan*") (providing a succinct history of this case). The case is now focused on whether Martorello exploited the Tribe to operate a predatory lending scheme. *Id.* at *1. Martinez works for Ascension, one of the entities accused of being a pass-through for Martorello's alleged scheme.

To continue his defense, on November 4, 2022, Martorello served a subpoena to Monique Martinez because Martorello "learned that [Martinez] may have information relevant" to Martorello's defenses. Ex. 1, Subpoena. Martinez is an employee of Ascension and manages Ascension's call center. Accordingly, for all times relevant to the subpoena and the testimony sought, Martinez is a tribal employee working for an immune entity. Entitled to immunity, Martinez moves to quash here.

## ARGUMENT

To summarize, Martinez moves to quash the Subpoena because, as an employee of an immune arm of a federally recognized Indian tribe, she shares that immunity from suit; because the subpoena is unduly burdensome; because it requires Martinez to disclose trade secrets and confidential information; and, because the subpoena is defective because it did not include witness fees.

### I.   Legal Standard

Rule 45 allows attorneys to issue third-party subpoenas in connection with civil litigation, with the following limitation:

> A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

*Philips Med. Sys. Puerto Rico, Inc. v. Alpha Biomedical & Diagnostic Corp.* (D.P.R. Aug. 12, 2020).

A court must quash a subpoena "that subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iii). "An evaluation of undue burden requires the court to weigh the burden to the

subpoenaed party against the information's value to the serving party." *W Holding Co. v. Chartis Ins. Co.*, 42 F. Supp. 3d 319, 321-322 (D.P.R. 2014). "[C]ourts also give special weight to the burden on non-parties of producing documents to parties involved in litigation. *W Holding Co. v. Chartis Ins. Co. of Puerto Rico*, 42 F. Supp. 3d 319, 322 (D.P.R. 2014). "[C]oncern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs." *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998).

**II.      The Subpoena is defective and unduly burdensome for lack of jurisdiction.**

As discussed above, on July 3, 2019, the United States Court of Appeals for the Fourth Circuit issued *Williams v. Big Picture Loans, LLC*, 929 F.3d 170 (4th Cir. 2019), and held that "a proper weighing of the [*Breakthrough*][1] factors demonstrates by a preponderance of the evidence that the Entities are indeed arms of the Tribe, Big Picture and Ascension are entitled to tribal sovereign immunity." *Id.* at 185.

With tribal sovereign immunity, the Tribal Entities possess—subject, again, to congressional action—the "common-law immunity from suit traditionally enjoyed by sovereign powers." *Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782, 788 (2014) (quoting *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978)). The Supreme Court has "time and again treated the 'doctrine of tribal immunity [as] settled law' and dismissed any suit against a tribe absent

---

[1] In *Breakthrough Management Group, Inc. v. Chukchansi Gold Casino & Resort*, 629 F.3d 1173 (10th Cir. 2010), the Tenth Circuit established a set of non-exhaustive factors to evaluate whether an entity is an arm of the tribe and entitled to share the tribe's sovereign immunity. Those factors are: (1) the method of the entities' creation; (2) their purpose; (3) their structure, ownership, and management; (4) the tribe's intent to share its sovereign immunity; (5) the financial relationship between the tribe and the entities; and (6) the policies underlying tribal sovereign immunity and the entities' "connection to tribal economic development, and whether those policies are served by granting immunity to the economic entities." *Id.* at 1187. The Ninth Circuit and Fourth Circuit have adopted the first five *Breakthrough* factors to analyze arm-of-the-tribe immunity and also considers the central purposes underlying the doctrine of tribal sovereign immunity. See *White v. Univ. of Cal.*, 765 F.3d 1010, 1026 (9th Cir. 2014); *Williams v. Big Picture Loans, LLC*, 929 F.3d 170, 177 (4th Cir. 2019).

Page 5 of 17

congressional authorization (or a waiver)." *Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782, 789 (2014) (quoting *Kiowa Tribe of Okla. v. Manufacturing Technologies, Inc.,* 523 U.S. 751, 756 (1998)). "In doing so, we have held that tribal immunity applies no less to suits brought by States (including in their own courts) than to those by individuals." *Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782, 789 (2014). "Equally important here, we declined in *Kiowa* to make any exception for suits arising from a tribe's commercial activities, even when they take place off Indian lands." *Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782, 790 (2014).

As an employee of Ascension, Martinez shares Ascension's immunity when acting in her employment capacity. Federal courts have consistently held that tribal immunity from suit extends to third-party subpoenas, such as the subpoena served on Martinez.

Consider *Alltel Communs., LLC v. DeJordy*, where a plaintiff subpoenaed a tribal administrator and the issue of "whether tribal immunity bars enforcement of subpoenas." 675 F.3d 1100, 1102 (8th Cir. 2012). After acknowledging tribal sovereign immunity, *Alltel* reasoned that "third-party subpoena[s] ... command a government unit to appear in federal court and obey whatever judicial discovery commands may be forthcoming. The potential for severe interference with government functions is apparent." *Id.* at 1103. The Eighth Circuit analogized to a third-party subpoena served on a federal employee: "Even though the government is not a party to the underlying action, the nature of the subpoena proceeding against a federal employee to compel him to testify about information obtained in his official capacity is inherently that of an action against the United States because such a proceeding 'interfere[s] with the public administration' and compels the federal agency to act in a manner different from that in which the agency would ordinarily choose to exercise its public function." *Id.* at 1103 (*quoting Boron Oil Co. v. Downie*, 873 F.2d 67, 70–71 (4th Cir.1989)).

Ultimately, the Eighth Circuit concluded that "from the plain language of the Supreme Court's definition of a 'suit' in *Dugan*, and from the Court's well-established federal policy of further Indian self-government [citation omitted] a federal court's third-party subpoena in private civil litigation is a 'suit that is subject to Indian tribal immunity.'"[2] 675 F.3d 1100, 1105 (8th Cir. 2012). The plaintiff's subpoena was quashed.

In *Pennsylvania by Shapiro v. Think Fin., LLC,* the district court considered subpoenas to an arm of the tribe and its CEO and quashed both. No. 14-CV-7139, 2018 WL 4635750 (E.D. Pa. Sept. 26, 2018). In that case, the district court recognized that "[t]o enforce a subpoena, a court must have jurisdiction. *Id.* At *3, citing *U.S. Catholic Conference v. Abortion Rights Mobilization,* 487 U.S. 72, 76 (1998) (stating "the subpoena power of a court cannot be more extensive than its jurisdiction"). And therefore, "[a] court does not have jurisdiction to enforce a subpoena where the subpoenaed 'entity enjoys immunity from suit,' and where immunity has not been effectively waived." *Id.* The subpoena was served to an arm of the tribe and the district court noted that "tribal immunity from suit encompasses third-party subpoenas. *Id.* (citing authority). The district court then considered the subpoena to the CEO, and explained that the subpoena "seek[s] his knowledge from his role as former CEO for Plain Green, when he was acting in an "official capacity" and immunity extends to tribal officials against claims in their official capacity. *Id.* at 6. Therefore, the CEO was immune from the subpoena. *Id.*

In *Commonwealth of Pennsylvania v. ThinkFinance*, No. 1:18-mc-0024 (E.D. La. Aug. 8, 2018), the defendant served a Rule 45 deposition subpoena on an arm of the tribe, which in response, filed a motion to quash. The Court reviewed evidence supplied by the tribal entity

---

[2] See *Dugan v. Rank,* 372 U.S. 609, 620 (1963) (defining 'suit' for purposes of sovereign immunity).

showing that it was vested with the privileges and immunities of the Tribe including immunity from suit. The Court held:

> Tribal sovereign immunity encompasses immunity from suits arising from a tribe's commercial activities, even when they take place off of Indian lands. Congress has never abrogated tribal immunity for suits arising from tribal lending activity, and there is no evidence that the Tribe has waived its immunity from suit. The Tribe's immunity from suit also extends to third-party subpoenas, such as the deposition subpoena served on MobiLoans.
>
> Sovereign immunity deprives a court of jurisdiction. Therefore, this court lacks jurisdiction to enforce the deposition subpoena, and Think Finance's proposed balancing test cannot overcome this lack of jurisdiction.

Case No. 1:18-mc-0024 (E.D. La. Aug. 8, 2018) (citations omitted)

In *Dillon v. BMO Harris Bank, N.A.*, the District Court in Oklahoma considered a motion to quash a subpoena served to the tribal chairman and secretary/treasurer of an economic arm of the tribe. No. 16-MC-5-CVE-TLW, 2016 WL 447502, at *1 (N.D. Okla. Feb. 4, 2016). Recognizing that a tribe's immunity extends to its subdivisions as well as to tribal officials when acting in their official capacity, the district court found that the subpoena was a suit, that there was no waiver, and the subpoena sought information from the tribal official in his official capacity. *Id.* at *2, *6 ("his knowledge of the loan agreements exits only because of his official position.") Accordingly, the tribal official was shielded from deposition testimony regarding his official capacity knowledge.

And with similar reasoning, in *Rodriguez v. Soto-Valentin*, this Court quashed a subpoena issued to federal employee because it was "not evident that the EPA has waived its sovereign immunity," so a subpoena "against a federal employee to compel him to testify about information obtained in his official capacity is inherently that of an action against the United States because such a proceeding 'interfere[s] with the public administration' and compels the

federal agency to act in a manner different from that in which the agency would ordinarily choose to exercise its public function." Civ. No. 22-1185 (SCC), 2022 WL 3754703, at *2 (D.P.R. Aug. 30, 2022) (quoting *Boron Oil Co. v. Downie*, 873 F.2d 67, 70-71 (4th Cir. 1989)). See also *United States v. Wahtomy*, No. CRIM.08-96E-BLW, 2008 WL 4693408, at *1 (D. Idaho Oct. 23, 2008), *aff'd*, 382 F. App'x 666 (9th Cir. 2010) (holding that, where defendant initially subpoenaed tribal judge in her official capacity but later argued he intended to serve a subpoena on tribal judge in her individual capacity claiming the information sought was an individual factual inquiry, the court disagreed and granted motion to quash subpoena stating the tribal judge was "entitled to the full measure of sovereign immunity accorded to Tribes."); cf.*Wopsock v. Dalton*, No. 2:12-CV-0570-RJS-EJF, 2018 WL 1578086, at *3 (D. Utah Mar. 29, 2018) (holding that when subpoenas sought testimony from individuals in their individual capacities instead of as tribal officials seeking testimony about the tribe, the subpoenas do not fall within tribal sovereign immunity).

The evidence here, the cover letter to the Subpoena, states that the deposition intends to seek information that Martinez may have that is relevant to Martorello's lawsuit. Ex. 1. Martorello's lawsuit is about whether Martorello exploited the Tribe to operate a predatory lending scheme. *Duggan* at *1. Martinez works for one of the entities accused of being a pass-through for Martorello's alleged scheme. Any information Martinez might have could only come from her official capacity with Ascension, and consequently, the information Martorello seeks is Ascension's privileged information. *Id.* Accordingly, the subpoena should be quashed.

If this Court allows the deposition, contrary to the *Williams* finding of immunity, Ascension and Martinez will be irreparably harmed by the intrusion on tribal sovereignty. "As with absolute, qualified, and Eleventh Amendment immunity, tribal sovereign immunity 'is an

immunity from suit rather than a mere defense to liability; and ... it is effectively lost if a case is erroneously permitted to go to trial.'" *Pistor v. Garcia*, 791 F.3d 1104, 1110 (9th Cir. 2015), (quoting *Burlington N. & Santa Fe Ry. Co. v. Vaughn*, 509 F.3d 1085, 1090 (9th Cir. 2007)). Irreparable harm will inevitably result from forcing Martinez to comply with a subpoena to testify in her official tribal capacity because, "[a] claim of sovereign immunity is forever lost by subjecting [the party] to the very process from which he asserts he is immune." *Bowen v. Doyle*, 880 F. Supp. 99, 134 (W.D.N.Y. 1995). Indeed, immunity doctrines are meant to give sovereigns "a right, not merely to avoid 'standing trial,' but also to avoid the burdens of 'such pretrial matters as discovery." *In re Facebook Inc.*, 42 F. Supp. 3d 556 (S.D.N.Y. 2014) (quoting *Behrens v. Pelletier*, 516 U.S. 299, 308 (1996)).

As Ascension is immune, and Martinez shares that immunity for all information obtained in her official capacity as an employee of Ascension, the subpoena is issued without jurisdiction and therefore an undue burden. Martinez respectfully requests that this Court quash the subpoena.

### III.     The subpoena is burdensome on Martinez compared to the information sought by Martorello.

Federal Rule of Civil Procedure 26(b)(1) sets forth the scope of discovery and states the "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." This broad rule is limited in part by Rule 45(d)(3), which requires a court to quash or modify a subpoena to a nonparty that: (i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden. Fed. R. Civ. P. 45(d)(3). Under the standards in Rule 45(d)(3), Martorello's subpoena is unduly burdensome.

Martorello has simply stated that he seeks a deposition of Martinez because he learned she may have information about the case. (Ex. 1.) He fails to articulate any actual information Martinez may know or reason for the information sought. *Id.*; He has not even established how such information is relevant.

More, Martorello's discovery began in 2017 in a case in the United States Federal Court for the Eastern District of Virginia, where he continues to litigate. *Duggan* is one of several copycat cases related to the same facts and circumstances as the first case in Virginia, but seeking recourse for a different class of plaintiffs. The discovery collected in any of these cases is shared among all of the cases by virtue of the parties' protective order. See, e.g., *Smith v. Martorello*, No. 3:18-CV-01651-AR, 2022 WL 1749887, at *4 (D. Or. May 2, 2022) ("Big Picture, Ascension, and the Tribe have already produced numerous documents (23,000 pages) for class certification in *Williams*. The parties have agreed that the documents and discovery produced in that case may be used in this lawsuit. Smith further provides that defendants have already deposed Hazen (three times), McFadden (twice), and Wichtman (once).") Quite literally, Martorello has participated in multiple of depositions and gathered thousands of pages of documents. *Id.* Which makes this subpoena to Martinez an undue burden because the information sought has already been produced by Ascension in the previous 5 years of litigation.

At bottom, this subpoena clearly falls short of the standards within the First Circuit. See, e.g., *Solamere Cap. v. DiManno*, No. 22-MC-91197-ADB, 2022 WL 3154551, at *7 (D. Mass. Aug. 8, 2022) citing *Ameristar Jet Charter, Inc. v. Signal Composites, Inc.*, 244 F.3d 189, 193 (1st Cir. 2001) (affirming motion to quash deposition subpoenas of nonparty corporate employees based on mere " 'hope' that" testimony "will contradict" prior deposition of nonparty corporate employer; and characterizing such " 'cumulative or duplicative' " discovery as "fishing

expedition") (citing Rule 26(b)(2)(i) and (ii)). The subpoena is an overbroad, unlimited, and therefore oppressive, especially in light of the fact that any such information could have been or has already been obtained in a far less intrusive manner such as written discovery.

The burden should then be compared to the need for this information or the value of the information sought. In light of the significant amount of discovery that is already available and has been ongoing for an extensive amount of time it is more likely than not that Martorello is already in possession of the information sought. He simply seeks duplicative information or seeks information contradicting what discovery has already produced in the last 5 years.

As such, when analyzed under balance of the burden verse the necessity of the information sought, it is clear that this subpoena represents an undue burden and thus should be quashed.

### VI. The subpoena should be quashed because it requires Martinez to disclose trade secrets and other confidential research, development, and commercial information.

Under Fed. Rule Civ. P. 45(d)(3)(B)(i), a court may quash or modify a subpoena "[t]o protect a person subject to or affected by a subpoena . . . if [the subpoena] requires "disclosing a trade secret or other confidential research, development, or commercial information." Alternatively, rather than quashing or modifying such a subpoena, the court may order the appearance or production of trade secrets or other confidential information "under specified conditions if the serving party: (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship[.]" Fed. R. Civ. P. 45(d)(3)(C)(i); *Puerto Rico Ports Auth. v. P/V Norwegian Epic* (D.P.R. July 12, 2022). Here, if the subpoena is not quashed, it should be modified to ensure that Martinez is not questioned about trade secrets and confidential information.

The language of the subpoena at issue is broad and ambiguous. The cover letter simply states that the issuing attorney "learned [Martinez] may have information relevant to the case." The case involves an alleged RICO conspiracy to lend at high interest rates to avoid state interest laws. Martinez works for an immune tribal entity managing a call center. It is unclear how Martinez may know information that may be helpful.

In her role for Ascension, Martinez is heavily involved with the Tribe's lending strategies, strategies for customer care and relationships, practices to ensure customer protections, and legal strategies to help resolve consumer issues. All of this fits within Rule 45(d)(3)(B)(i) as trade secrets and confidential information.

Ascension does what it can to safeguard this information as if it were to become public, Ascension's competitors could use the information to disadvantage Ascension, and the Tribe restricts access to its tribal business records.

For these reasons, if the deposition occurs, a protective order should issue stating the limits to the deposition to shield Ascension's trade secrets and confidential information.

### V.     The Subpoena is defective because it did not include fees.

Pursuant to Fed. R. Civ. P. 45(b)(1), "[s]erving a subpoena requires delivering a copy to the named person and, if the subpoena requires that person's attendance, tendering the fees for 1 day's attendance and the mileage allowed by law." These fees must be tendered at the time of the service of the subpoena. *CF & I Steel Corp. v. Mitsui & Co. (U.S.A.)*, 713 F.2d 494, 496 (9th Cir. 1983) (citing 5A J. Moore & J. Lucas, Moore's Federal Practice ¶ 45.06[1] (2d ed. 1982)). And under 28 U.S.C. § 1821(b), "A witness shall be paid an attendance fee of $40 per day for each day's attendance. A witness shall also be paid the attendance fee for the time necessarily

occupied in going to and returning from the place of attendance at the beginning and end of such attendance or at any time during such attendance."

"Here, it appears that all of the subpoenas called for the attendance of a keeper of records to testify at a deposition thereby triggering the requirement that witness and mileage fees be tendered with the subpoenas." *In re New England Compounding Pharmacy, Inc. Prod. Liab. Litig.*, No. MDL 13-2419-FDS, 2013 WL 6058483, at *5 (D. Mass. Nov. 13, 2013). A subpoena served without accompanying fees and allowable mileage is not valid, and it is proper for a district court to quash such an improper subpoena. *See In re Dennis*, 330 F.3d 696, 705 (5th Cir. 2003); *CF & I Steel Corp.*, 713 F.2d at 496.

Here, when the Subpoena was served on Martinez, no fees were tendered. Without fees, the subpoena is defective. This Court should therefore quash the Subpoena on this ground as well.

## CONCLUSION

By issuing this Subpoena, Martorello is attempting to exercise jurisdiction outside of the district court's authority and trample on Ascension's immunity. For want of jurisdiction, and in the face of a pending motion to stay, the Subpoena constitutes an undue burden on the deponent, Ascension's employee Martinez. Martinez respectfully moves this Court for an Order quashing Martorello's November 4, 2022, Subpoena.

WHEREFORE, Martínez respectfully requests that this Honorable Court enter an order quashing Martorello's November 4, 2022.

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico, this 17th day of November 2022.

**Ferraiuoli** LLC

PO Box 195168
San Juan, PR 00919-5168
Phone: 787.766.7000
Fax: 787.766.7001

*/s/ Roberto A. Cámara Fuertes*

Roberto A. Cámara Fuertes
USDC-PR 219002
Email: rcamara@ferraiuoli.com

CERTIFICATE OF SERVICE

I HEREBY CERTIFY, that on this same date, I delivered the foregoing to the Clerk of the Court for manual filing as a new Miscellaneous Proceeding before this Honorable Court and that I shall send a file-stamped copy of the foregoing by certified mail, return service requested, and also by email to the following service list recipients:

Ian D. Roffman (BBO No. 637564)
Michael J. Leard (BBO No. 681468)
NUTTER, McCLENNEN & FISH LLP
Seaport West
155 Seaport Blvd.
Boston, MA 02210
T. 617.439.2000
F. 617.310.9000
iroffman@nutter.com
mleard@nutter.com


John Roddy (BBO No. 424240)
Elizabeth Ryan (BBO No. 549632)
BAILEY GLASSER LLP
176 Federal Street
5th Floor
Boston, MA 02110
T. 617.439.6730
F. 617.951.3954
jroddy@baileyglasser.com
eryan@baileyglasser.com

Bernard R. Given (*pro hac vice*)
Bethany D. Simmons (*pro hac vice*)
LOEB & LOEB LLP
10100 Santa Monica Blvd. Suite 2200
Los Angeles, CA 90067
T. 310.282.2000
F. 310.282.2000
bgiven@loeb.com
bsimmons@loeb.com

Michael A. Caddell (*pro hac vice*)
Cynthia B. Chapman (*pro hac vice*)
John B. Scofield, Jr. (*pro hac vice*)

Amy E. Tabor (*pro hac vice*)
CADDELL & CHAPMAN
628 East 9th Street
Houston, TX 77007
T. 713.751.0400
F. 713.751.0906
mac@caddellchapman.com
cbc@caddellchapman.com
jbs@caddellchapman.com
aet@caddellchapman.com

Justin Gray (*pro hac vice*)
ROSETTE LLP
44 Cesar E. Chavez Ave. SW Suite 250
Grand Rapids, MI 49503
T. 616.655.1601
F. 517.913.6443
jgray@rosettelaw.com

In San Juan, Puerto Rico, this 17th day of November, 2022.

**Ferraiuoli** LLC
PO Box 195168
San Juan, PR 00919-5168
Phone: 787.766.7000
Fax: 787.766.7001

Roberto A. Cámara Fuertes
USDC-PR 219002
Email: rcamara@ferraiuoli.com